```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-----------------------------------X
UNITED STATES OF AMERICA           :
                                   :
           v.                      :    NO. 3:07CR195 (EBB)
                                   :
JAMES A. COHENS,                   :
                                   :
           Defendant.              :
-----------------------------------X
```

<u>RULING ON APPLICATION OF THE ARMED CAREER CRIMINAL ACT</u>

<u>INTRODUCTION</u>

Defendant James Cohens was convicted after trial of the single count in the Indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e). At trial, the parties stipulated that the defendant had a prior felony conviction, thus satisfying one element of § 922(g). The question currently before the court is whether the defendant is subject to the 15-year mandatory minimum imposed by the Armed Career Criminal Act ("ACCA"), codified at § 924(e), for a defendant who violates § 922(g) and has three prior convictions for either a "violent felony" or a "serious drug offense." The parties' dispute is about whether the defendant's Connecticut state court drug convictions qualify as "serious drug offenses" as that term is defined in the ACCA.

<u>DISCUSSION</u>

1. <u>ACCA and the Categorical Approach of *Shepard*</u>

The ACCA imposes a mandatory minimum term of imprisonment of

1

fifteen years for any "person who violates section [18 U.S.C. § 922(g)(1)] and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e).  The ACCA defines, in relevant part, the term "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."  Id.  The term "violent felony" is defined, in relevant part, as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id.

In determining whether a prior conviction meets the ACCA's definitions, a court must generally take a "categorical approach," which means that the court may "look only to the fact of conviction and the statutory definition of the prior offense" and is "generally prohibit[ed] . . . from delving into particular facts disclosed by the record of conviction."  Shepard v. United States, 544 U.S. 13, 17 (2005) (quoting Taylor v. United States, 495 U.S.

2

575, 602 (1990)).  However, in cases in which "the statute of conviction covers both conduct that would and conduct that would not constitute a violent felony [or a serious drug offense]," a court applying the categorical approach will be unable to determine whether a defendant's previous conviction qualifies him or her for sentencing under the ACCA.  See United States v. Lynch, 518 F.3d 164, 168 (2d Cir. 2008).  In this "'narrow range of cases' . . ., the sentencing court may 'go beyond the mere fact of conviction'" to determine the nature of the offense.  Id. (quoting Taylor, 495 U.S. at 602).  Under this modified categorical approach, the court's enquiry "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  Shepard, 544 U.S. at 26; see also Lynch, 518 F.3d at 168-69  (citing Taylor, 495 U.S. at 602) (noting that where the prior conviction was obtained at trial, "the sentencing court may also consult the charging documents and jury instructions to determine whether the conviction was for conduct that falls under the definition of violent felony").

The government contends that the defendant in this case should be sentenced under the ACCA because he has been convicted of four qualifying offenses in Connecticut state court.  The defendant was convicted 1) on February 21, 1996, of Conspiracy to Sell Narcotics

3

in violation of Connecticut General Statutes §§ 21a-277(a) and 53a-48, 2) on October 15, 1991, of Sale of Narcotics in violation of § 21a-277(a), 3) on September 14, 1989, of Sale of Narcotics in violation of § 21a-277(a), and 4) on April 27, 1989, of Assault in the Second Degree in violation of Connecticut General Statutes § 53a-60. The defendant concedes that his assault conviction meets the definition for a violent felony under the ACCA. The parties do not agree, however, about whether the defendant's drug convictions under § 21a-277(a)[1] constitute "serious drug offenses" as defined by the ACCA.

The defendant contends that Connecticut state law criminalizes certain substances that are not listed in the federal Controlled Substances Act, as codified at 21 U.S.C. § 802. In particular, the defendant points out that state law defines both benzylfentanyl and thenylfentanyl, neither of which appears in 21 U.S.C. § 802, as Schedule I controlled substances. See Conn. Agencies Regs. § 21a-243-7(a).[2] The defendant argues that, because state law

---

[1] Connecticut General Statutes § 21a-277(a) provides for the punishment of

> Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter . . .

[2] Connecticut General Statutes § 21a-240(9) defines a "controlled substance" as a "drug, substance, or immediate

4

criminalizes conduct that does not fall within the ACCA's definition of a serious drug offense, the court cannot, by applying the categorical approach of Shepard, determine whether or not his prior drug convictions qualify him for the ACCA's 15-year mandatory minimum sentence. Two courts in this district have considered this issue and both have sided with defendants in concluding that a sentencing court, when considering a defendant's prior conviction under § 21a-277(a), must adopt a modified categorical approach and must look into facts disclosed by the record of conviction in order to determine whether the conviction meets the ACCA's definition of a serious drug offense. United States v. Madera, 521 F. Supp. 2d 139 (D. Conn. 2007); United States v. Lopez, 536 F. Supp. 2d 218 (D. Conn. 2008).

The government asserts that the conclusion reached by these district courts was incorrect. (Gov.'s Mem. at 13). The government does not appear to dispute that the modified categorical approach is required where the state statute of conviction defines and regulates controlled substances more broadly than the federal Controlled Substances Act. The government argues, however, that Connecticut state law does not actually criminalize the manufacture

---

precursor in schedules I to IV, inclusive of the Connecticut controlled substance scheduling regulations. . ." Since 1987, when Connecticut General Statutes § 21a-242 was repealed, the schedules of controlled substances have been listed in the Connecticut Administrative Regulations §§ 21a-243-7 through 21a-243-11.

5

or distribution of benzylfentanyl and thenylfentanyl, despite their inclusion in the state's controlled substances schedules. The government's argument relies on a provision of Connecticut General Statutes § 21a-243. Section 21a-243, which governs the regulations establishing schedules of controlled substances, provides, in relevant part, that

> (a) The Commissioner of Consumer Protection shall adopt regulations for the efficient enforcement and operation of sections 21a-244 to 21a-282, inclusive.
>
> (b) The Commissioner of Consumer Protection may, so far as may be consistent with said sections 21a-244 to 21a-282, inclusive, adopt the regulations existing under the federal Controlled Substances Act and pertinent regulations existing under the federal food and drug laws and conform regulations adopted hereunder with those existing under the federal Controlled Substances Act and federal food and drug laws.
>
> (c) The Commissioner of Consumer Protection acting upon the advice of the Commission of Pharmacy, may by regulation designate, after investigation, as a controlled substance, a substance or chemical composition containing any quantity of a substance which has been found to have a stimulant, depressant or hallucinogenic effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence or both. Such substances are classifiable as amphetamine-type, barbiturate-type, cannabis-type, cocaine-type, hallucinogenic, morphine-type and other stimulant and depressant substances, and specifically exclude alcohol, caffeine and nicotine. Substances which are designated as controlled substances shall be classified in schedules I to V by regulations adopted pursuant to subsection (a) of this section.
>
> (d) The Commissioner of Consumer Protection may by regulation change the schedule in which a substance classified as a controlled substance in schedules I to V of the controlled substance scheduling regulations is placed. On or before December 15, 1986, and annually

> thereafter, the commissioner shall submit a list of all
> such schedule changes to the chairmen and ranking members
> of the joint standing committee of the general assembly
> having cognizance of matters relating to public health.
>
> . . .
>
> (f) In the event of any inconsistency between the
> contents of schedules I, II, III, IV and V of the
> controlled substance scheduling regulations and schedules
> I, II, III, IV and V of the federal Controlled Substances
> Act, as amended, the provisions of the federal act shall
> prevail, except when the provisions of the Connecticut
> controlled substance scheduling regulations place a
> controlled substance in a schedule with a higher
> numerical designation, schedule I being the highest
> designation.
>
> (g) When a drug that is not a controlled substance in
> schedule I, II, III, IV or V, as designated in the
> Connecticut controlled substance scheduling regulations,
> is designated to be a controlled substance under the
> federal Controlled Substances Act, such drug shall be
> considered to be controlled at the state level in the
> same numerical schedule for a period of two hundred forty
> days from the effective date of the federal
> classification.

The government focuses on subsection (f), which, it argues, eliminates any inconsistency between state and federal definitions for controlled substances. The government contends that the effect of subsection (f) is to "nullify[], as a matter of law," the state's regulation of benzylfentanyl and thenylfentanyl. (Gov.'s Mem. at 11-13.) The government argues that, based on its interpretation of the statute, the inclusion of these two substances in the Connecticut schedule of controlled substances is "without legal effect" and that a person could not be convicted in Connecticut for an offense involving these substances. (Id. at 13,

7

15.) The government argues that, so long as subsection (f) mandates absolute conformity between the state schedules of controlled substances and the federal Controlled Substances Act, then the court may determine, upon application of the categorical approach, that a conviction under § 21a-277(a) was for a serious drug offense.

This argument was addressed at length and was rejected by the court in Lopez, 536 F. Supp. 2d at 221-223. See also Madera, 521 F. Supp. 2d at 154 n. 3 (holding that § 21a-243(f) "cannot be interpreted to make the federal and state controlled substances schedules identical"). The government, however, has not addressed the Lopez court's decision or reasoning in any of its submissions to this court.

Under the government's interpretation, the State of Connecticut cannot, under § 21a-277(a), punish the sale or manufacture of any substance not included on the schedules of the Federal Controlled Substances Act. This interpretation thus presents the "unusual phenomenon of a state purportedly limiting its plenary police power." Lopez, 536 F. Supp. 2d at 222. More significantly, the obvious flaw in the government's interpretation of § 21a-243(f) is that it renders that subsection inconsistent with the other provisions of § 21a-243. Id. at 221-23. Subsections (b) and (c) provide that the Commissioner of Consumer Protection may *either* adopt the "regulations existing under the

federal Controlled Substances Act" and the federal food and drug laws *or* may, after investigation, designate as a controlled substance a substance "which has been found to have a stimulant, depressant or hallucinogenic effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence." See Id.; see also State v. Gurreh, 758 A.2d 877, 881-83 (Conn. App. 2000) (describing the Commissioner's power to designate controlled substances). If subsection (f) required conformity between the substances designated as controlled substances by the state schedule and the federal Controlled Substances Act, as suggested by the government, then the Commissioner's power, granted by subsections (b) and (c), to place controlled substances on the state schedules would be meaningless. See Lopez, 536 F. Supp. 2d at 222 ("It is [the Commissioner's] power, confirmed in one part of the statute, which would inexplicably be circumscribed were the Government's view of subsection (f) correct . . .") The government's interpretation is therefore highly implausible because it fails to account for the inconsistency it creates between subsection (f) and the other provisions of the statute. See United States v. Atlantic Research Corp., 127 S. Ct. 2331, 2336 (2007) (quoting King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991)) ("Statutes must 'be read as a whole.'")

The more plausible interpretation of subsection (f) is that it

9

merely governs conflicts that arise when a controlled substance appears on a differently numbered schedule in the state and federal schedules of controlled substances. Under this interpretation, the provision is unrelated to the state's initial designation of a previously unscheduled substance as a controlled substance. This interpretation is consistent with the language of the first clause in subsection (f), which refers specifically to the "contents of schedules I, II, III, IV and V" of the state and federal schedules. The second clause of the subsection, which allows the Commissioner of Consumer Protection to place a controlled substance in a higher schedule than the federal designation, confirms that the subsection as a whole is concerned with designation in a particular schedule and was not intended to interfere with the legislature's power, delegated to the Commissioner in subsections (b) and (c), to determine in the first place whether or not a substance should be controlled. Thus, it is apparent that the correct interpretation of subsection (f) is the one adopted by the other district courts that have considered this issue: the provision was intended to act as a "floor" to ensure that the state's scheduling of a substance that had been designated as controlled substance would be at least as strict as the federal government's scheduling of the same substance. Lopez, 536 F. Supp. 2d at 222 (quoting Madera, 521 F. Supp. 2d at 154 n.3).

The court therefore rejects the government's interpretation of

§ 21a-243 and concludes that thenylfentanyl and benzylfentanyl are indeed controlled substances under Connecticut state law such that their manufacture and sale may be punished under § 21a-277.[3] In view of the fact that an individual could be convicted under § 21a-

---

[3] The Connecticut legislature voted to include thenylfentanyl and benzylfentanyl as controlled substances on Schedule I in 1986. See 1986 Conn. Acts 96 § 1 (Reg. Sess.) This legislative act took place before the legislature repealed the statute designating controlled substances and determined that the schedules of controlled substances would appear only in the regulations promulgated by the Commissioner of Consumer Protection. See 1987 Conn. Acts 129 § 3 (Reg. Sess.) In its papers, the government refers to thenylfentanyl and benzylfentanyl as "obscure substances" and seems to suggest that they remain on the state schedules only because the state has failed to take any action to de-list them. (Gov.'s Mem. at 10-13.) The purported obscurity of these substances does not affect the court's conclusion that a modified cotegorical approach is required in order to determine whether a § 21a-277(a) conviction was for a serious drug offense as defined in the ACCA. Futhermore, the government's characterization of Connecticut's decision to control these narcotics is difficult to reconcile with the fact that over a dozen other states have chosen to place thenylfentanyl and benzylfentanyl on their schedules of controlled substances, or to otherwise criminalize or regulate these drugs, alongside other better-known narcotics. See Ariz. Rev. State. Ann. § 13-3401(20) (West 2008); Fla. Stat. Ann. § 893.03(1)(a) (West 2008); Ga. Code Ann., § 16-13-25(4) (2007); Haw. Rev. Stat. Ann. § 329-14(b) (2008); Ind. Code Ann. § 35-48-2-4(b) (Michie 2008); Iowa Code Ann. § 124.204(9) (West 2008); Kan. Stat. Ann. § 65-4105(g) (2007); Md. Code Ann. [Criminal Law] § 5-402(e)(1) (Michie 2008); Mo. Ann. Stat. § 195.017 (West 2008); Neb. Rev. Stat. § 28-405(a) (2007); R.I. Gen. Laws § 21-28-2.08(e) (2008); Tenn. Code. Ann. § 39-17-406(g) (2008); Utah Code Ann. § 58-37-4(2)(a)(iv) (2008); Va. Code Ann. § 54.1-3446(5) (Michie 2008). These two substances also appear in the temporary or emergency controlled substances schedules of a number of states. See Idaho Code § 37-2705(g) (2008); 720 Ill. Comp. Stat. 570/204 (2008); Ohio Rev. Code Ann. § 3719.41(F) (West 2008); W. Va. Code, § 60A-2-204(g) (2008); Mont. Code Ann. § 50-32-222(8) (2007); Wyo. Stat. Ann. 1977 § 35-7-1014 (Michie 2008).

11

277(a) for an offense involving substances that have not been defined as controlled substances under the federal Controlled Substances Act, the court cannot determine on the basis of the categorical approach that the defendant's § 21a-277(a) convictions qualify him for sentencing under the ACCA.

2. The Modified Categorical Approach

Because it is not apparent from the statutory definitions whether a conviction for violation of Connecticut General Statutes § 21a-277(a) is a qualifying offense under the ACCA, the court must look further than the mere fact of the defendant's convictions. Insofar as the modified categorical approach of Shepard allows, the court will consider facts disclosed by the defendant's state court records of conviction.

With respect to the defendant's February 21, 1996, conviction for Conspiracy to Sell Narcotics, the government has presented the transcript of the defendant's state court guilty plea. (Gov.'s Mem., Ex. D.) The plea colloquy involved the following sequence of events: first, the defendant entered a guilty plea (id. at 1), next, there was a recess during which the defendant was returned to the holding cell (id. at 2.); following the recess, defendant was returned to the courtroom and the prosecutor offered what she claimed to be the "factual basis" of the offense (id. at 3.) The court had apparently not heard the factual basis prior to this point. (Id.) The prosecutor reported that the

> incident involve[d] undercover police officers involved in street level narcotic purchases for certain parties. This report indicates that officers observed sales taking place. Mr. Cohens was involved with another individual officer in undercover capacity, was handed drugs by a co-defendant of Mr. Cohens. The report indicated Mr. Cohens would hand drugs to co-defendant, after the co-defendant would sell drugs, twenty dollar sale of cocaine, and undercover officer with particular parties involved. Mr. Cohen [sic] being one . . .

(Id. at 4.) The government argues that the prosecutor's comments demonstrate that the offense involved the sale of cocaine and, therefore, that the offense was a "serious drug offense" as defined in the ACCA. However, it is clear from the transcript that the prosecutor was simply summarizing a police report. The Supreme Court has specifically held that a sentencing court may not rely on a police report in determining whether a defendant's previous conviction meets the ACCA's definitions of a violent felony or a serious drug offense. Shepard, 544 U.S. at 21-23. That the prosecutor essentially read the police report into the record does not turn it into the sort of evidence that may be relied upon under Shepard's modified categorical approach.

"Shepard teaches that the sentencing court cannot make its own finding of fact regarding whether a prior conviction qualifies as a 'violent felony' (or 'serious drug offense') under the ACCA." United States v. Rosa, 507 F.3d 142, 153 (2d Cir. 2007) (citing Shepard, 544 U.S. at 21). Instead, the sentencing court must rely on specific findings made by the court in which the defendant was previously convicted or on the admissions made by the defendant

13

during a guilty plea. Shepard allows consideration of facts contained in the transcript of a plea colloquy only to the extent that "the factual basis for the plea *was confirmed by the defendant*." See id. at 27 (emphasis added); see also id. at 16 (holding that a sentencing court is limited to considering "explicit factual finding[s] by the trial judge to which the defendant assented"). The state court transcript presented by the government does not contain any "explicit factual finding" with respect to the particular drug involved. Moreover, there is no indication that the defendant assented to the prosecutor's claim that the drug involved was cocaine since the prosecutor provided the factual basis after the defendant had pleaded guilty. See Madera, 521 F. Supp. 2d at 153 (holding that the prosecutor's statement at a plea colloquy that the offense involved heroin was insufficient to establish that the offense was an ACCA predicate because this statement was not confirmed by the defendant and the state court made no explicit finding). See also Rosa, 507 F.3d at 157-59 (holding that the defendant's failure to object when the judge at the defendant's state court guilty plea referred to a gun that was involved in the crime did not qualify as an admission by silence that a gun was used and, therefore, did not establish that the crime was a violent felony as defined by the ACCA); Therefore, the government has not met its burden of establishing that the defendant was convicted of a "serious drug offense" on February 21,

1996.

The only available records for the defendant's October 15, 1991, and September 14, 1989, § 21a-277(a) narcotics convictions do not indicate what substance was involved. (See Gov.'s Mem., Exs. B, C.) These convictions therefore do not qualify as predicate offenses under the ACCA.[4]

## CONCLUSION

For the foregoing reasons, the court concludes that the government has established only one of the requisite three convictions for a "violent felony" or a "serious drug offense," and, therefore, concludes that the ACCA is inapplicable. The defendant will be sentenced accordingly.

SO ORDERED.

 /s/ Ellen Bree Burns, SUDJ
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 12th day of August, 2008.

---

[4] Furthermore, as indicated in the Presentence Report prepared in this case, court records for the defendant's 1991 conviction "do not reflect that the defendant was represented by counsel." Presentence Report ¶ 31. It would therefore be improper to rely on this conviction in sentencing the defendant under the ACCA. See Daniels v. United States, 532 U.S. 374 (2001) (citing Custis v. United States, 511 U.S. 485 (1994)) (noting that a defendant who is being sentenced under the ACCA may collaterally attack a predicate conviction that was obtained without assistance of counsel); Madera, 521 F. Supp. 2d at 157.

15